## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JANE DOE,                                    )
                                             )
                    Plaintiff,               )          **No. 1:24-cv-989**
                                             )          **JURY TRIAL DEMANDED**
        v.                                   )
                                             )
JAMES CRUZ,                                  )
                                             )
                    Defendant.               )

### VERIFIED COMPLAINT

Plaintiff Jane Doe, by and through her attorneys, Fegan Scott LLC, for her Complaint against James Cruz, alleges as follows:

### INTRODUCTION

1.      This action is brought pursuant to the New York Adult Survivors Act ("ASA"), CPLR § 214-J, as it alleges physical, psychological, and emotional injuries and damages suffered as a result of conduct that constitutes sexual offenses as defined by § 130 of the New York Penal Law committed against a person who is eighteen years of age or older.

2.      This action is further timely pursuant to the Tolling Agreement and First Addendum thereto, which tolled the statute of limitations by agreement between the parties through February 9, 2024.

### PARTIES

3.      Plaintiff Jane Doe is a resident of Tennessee and a citizen of the United States.

4.      Defendant James Cruz is a resident of New York, New York and a citizen of the United States.

**JURISDICTION AND VENUE**

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Plaintiff is a resident of a foreign state.

6.      Venue for this action is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because, on information and belief, Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**FACTS**

**A.  Defendant begins grooming Plaintiff while she was a minor.**

7.      During the summer of 1999, while 17 years old and in high school, Plaintiff worked as an intern at a radio station in Alabama.

8.      The station would assign the interns to work at events sponsored by the station, including concerts. The interns would represent the station at these events, work at the station's booths, and work backstage at concerts to support the production and station staff, among other responsibilities.

9.      One of the station's flagship events was a three-day arts and music festival.  The event included multiple stages where bands performed.

10.     At the station's flagship event in 1999, the band Splender was performing on the "Miller Lite" stage on Saturday night. The "Miller Lite" stage was the location from which the radio station made announcements.

11.     Plaintiff was assigned to work backstage supporting the production and station staff, as well as the bands, on the "Miller Lite" stage.

12.     While working as an intern at this event, Plaintiff met Defendant James Cruz, the

bassist for the band Splender.

13.     Despite the fact that Plaintiff was a minor, Cruz hooked up with Plaintiff that evening, engaging in sexual touch of her intimate parts.

**B.  Despite knowing she was a minor and a virgin, Defendant sexually assaulted Plaintiff and transmitted to her a sexually transmitted disease.**

14.     That same summer, Cruz invited Plaintiff to attend an event in Georgia at which Splender and other bands were playing.

15.     Plaintiff was nervous to travel to Georgia alone and asked a male friend to join her. Plaintiff and her friend arranged to stay in a hotel close to the concert venue where the band was also staying.

16.     Plaintiff had previously disclosed to Cruz that she was a virgin and had not previously had sexual intercourse.

17.     After the concert was over, Cruz invited Plaintiff back to his hotel room, which he was sharing with the drummer from his band.

18.     After Plaintiff arrived at Cruz's hotel room, the drummer went to Plaintiff's hotel room where her friend was located. The drummer asked Plaintiff's friend if he could spend the night in the second bed in Plaintiff's hotel room. The drummer explained that he had been sharing a room with Cruz, but that he left because Cruz was spending the night and having sex with Plaintiff there.

19.     The drummer and Plaintiff's friend discussed that Plaintiff was a minor and that her friend was upset that Cruz was taking advantage of her.

20.     In response to the concerns, the drummer expressed that Cruz's conduct is what musicians did on the road, *i.e.* have sex with "fans" like Plaintiff, even if they were minors.

3

21.     Cruz pressured Plaintiff to have sexual intercourse with him.  During the sexual encounter, Cruz did not wear a condom but repeatedly assured Plaintiff it would be okay.

22.     Plaintiff suffered physical injury and severe emotional distress as a result of Defendant's actions.

### C. Within a week of Cruz taking her virginity, Plaintiff developed an initial and severe outbreak of herpes.

23.     The following week, Plaintiff suffered a first and severe outbreak of Herpes Simplex 2 (HSV-2).

24.     Defendant transmitted HSV-2 to Plaintiff and had not disclosed to Plaintiff prior to sexual intercourse that he had HSV-2. Prior to the night in the hotel room with Defendant, Plaintiff had never engaged in sexual intercourse with anyone.

25.     Plaintiff promptly went to her doctor, who tested and diagnosed the HSV-2.  She learned from her doctor that there was no cure for the disease and no way to clear the virus once infected. Treatment would be ongoing and lifelong, and would likely need to be managed with medication.

26.     Plaintiff had a clinically consistent response to the infection, with a painful number of open labial lesions that required pain medication and numerous oatmeal baths. Plaintiff found it impossible to urinate normally due to the pain of the outbreak, which lasted for more than a week.

27.     Plaintiff was extremely traumatized both from Defendant's treatment of her and his transmission of a sexually transmitted disease.

### D. Defendant engages in sexual manipulation with Plaintiff to cause her to engage in unwanted sex acts when she moves to New York.

28.     After graduating high school, Plaintiff moved to New York in September 2000 to

attend college.

29.     Between September 2000 and July 2001, Cruz sexually manipulated and abused Plaintiff.  He did so by claiming he owned her and that she belonged to him given that he had taken her virginity, and that she could never belong to anyone else. He engaged in a pattern of psychological abuse and manipulative control over Plaintiff.

30.     Defendant engaged in sexual manipulation through the use of tactics such as verbal and emotional coercion, gaslighting, relational threats, humiliation, emotional abuse, and other forms of manipulation to control Plaintiff's sexual behavior.

31.     The sexual manipulation in which Cruz engaged is different from consensual sexual activity. Consensual sexual activity happens when two or more people freely agree to engage in sexual activity that benefits everyone involved. In contrast, the sexual manipulation in which Cruz engaged involved distancing, coercion, lies, and exploitation to fulfill his own self-serving desires.

32.     Just by way of example, Plaintiff felt tainted, contaminated, and dirty as a result of Cruz's transmission of HSV-2 to her. Cruz used Plaintiff's feelings of worthlessness to maintain control over Plaintiff and ensure that she submitted to his sexual needs.

33.     Plaintiff contemporaneously documented the grooming and control that Cruz exerted over her in her diary.

34.     In one diary entry from September 12, 2000, Plaintiff described how Cruz ripped her innocence from her, gave her "HSV", and took her virginity – all because "[h]e just wanted to have sex with a young girl."

35.     Later that month, Plaintiff recounted Cruz's admission that he gave her herpes: "He told me that he was in denial about that but he knew he had to be the cause of the virus because I was a virgin."

36.     By March 2001, Plaintiff was extremely depressed by the abuse and was having difficulty functioning.

37.     Then, on or about March 5, 2001, Cruz began filming himself forcibly and intentionally touching the sexual or intimate parts of Plaintiff. While breaking down sobbing, Plaintiff requested multiple times that Cruz stop filming the sexual abuse.  Plaintiff was extremely distressed not only by the abuse but also by Cruz's recording of the abuse over her objections.

38.     Plaintiff felt ashamed and sick. The experience was extremely degrading to Plaintiff, and she felt she was being used and debased by Defendant for his own sexual gratification without regard to the damage he caused her.

39.     This was not a single occurrence. Thereafter, on multiple occasions, Cruz recorded himself forcibly and intentionally touching the sexual or intimate parts of Plaintiff.

40.     Plaintiff was aware of the recordings on some occasions and later would learn that he recorded other times without her knowledge.

41.     Subsequently in 2001, Cruz played a videotape for Plaintiff which contained a compilation of incidents of sexual abuse by Cruz of Plaintiff.  Watching the video, Plaintiff felt extremely sick to her stomach as there were numerous incidents depicted in which she did not know Cruz had been recording.

42.     Plaintiff understood and believed that Cruz showed her the videotape as a show of power that she could not complain about him, as an implicit threat that he would continue to control her even if she refused him, and that if he was angry or displeased with her, he would disseminate the videotape.

43.     Despite her numerous requests, Cruz refused to give her the videotape for destruction or to offer her proof that it had been destroyed. He has yet to do so.

6

44.     Defendant's sexual manipulation and abuse of Plaintiff has caused devastating effects. Plaintiff has suffered from extreme feelings of shame, guilt, anxiety, depression, and post-traumatic stress disorder.  It has negatively affected Plaintiff's ability to regulate emotion, to trust others, and to form healthy relationships. Plaintiff has been diagnosed with and has been treated for chronic complex post-traumatic stress disorder (C-PTSD) as a direct result of Defendant's actions.

45.     Moreover, Defendant's sexual manipulation and abuse of Plaintiff has had economic consequences for Plaintiff beyond the costs of ongoing medical and mental health treatment. Due to the trauma she experienced, Plaintiff has foregone public opportunities for fear of Defendant's publication and use of the illicit recordings, further exacerbating the negative effects of sexual manipulation and abuse on her life.

## STATUTE OF LIMITATIONS

### A.  This action is timely under CPLR 214-J (The Adult Survivors Act).

46.     This Complaint alleges intentional and negligent acts for physical, psychological, and other injuries suffered as a result of conduct that would constitute sexual offenses as defined by § 130 of the New York Penal Law committed against a person who is eighteen years of age or older.

47.     Section 214-J of the New York Civil Practice Law and Rules revived certain civil claims as defined in Section 130 of New York Penal Law. NY CPLR § 214-J (2022).

48.     Defendant's conduct in New York with Plaintiff to which she did not consent included forcible touching as defined by New York Penal Law § 130.52 in that Defendant forcibly touched the sexual or intimate parts of Plaintiff for the purpose of degrading or abusing Plaintiff or for the purpose of gratifying Defendant's sexual desire under circumstances in which Plaintiff

did not expressly or impliedly acquiesce in Defendant's conduct.

49.     Such claims have been revived by CPLR 214-j, which permitted claims to be commenced between November 24, 2022 and November 24, 2023.

50.     On November 17, 2023, Plaintiff and Defendant entered a Tolling Agreement with respect to Plaintiff's claims against Defendant, including Plaintiff's claims under New York Adult Survivors Act, tolling the time for filing this action through December 23, 2023.

51.     On December 22, 2023, Plaintiff and Defendant entered the First Addendum to Tolling Agreement, tolling the time for filing this action through February 9, 2024.

52.     This action is timely because it was filed on or before February 9, 2024.

**B. This action is timely under New York City Administrative Code § 10-1104.**

53.     This Complaint alleges timely claims under New York City Administrative Code § 10-1104, which provides an independent cause of action for plaintiffs who are injured by a party who enables, participates in, or conspires in the commission of a crime of violence motivated by gender. Causes of action that would otherwise be barred due to a statute of limitations are revived for the period of March 1, 2023 to March 1, 2025 under this statute.

54.     This action is timely because it was filed before March 1, 2025.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**CIVIL BATTERY**

55.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

56.     Cruz committed a battery against Plaintiff because he intentionally engaged in unlawful, intentional, offensive, and forcible touching to Plaintiff's person under circumstances to which she did not consent.

57.     As a result of Defendant's conduct, Jane Doe has suffered physical injury, severe emotional distress, humiliation, embarrassment, anxiety, economic harm, and other consequential damages.

58.     The conduct of Cruz described above was willful, wanton, and malicious. At all relevant times, Cruz acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff.

59.     By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant according to proof at trial.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK CITY
### ADMINISTRATIVE CODE § 10-1104

60.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

61.     New York's "Victims of Gender-Motivated Violence Protection Law" permits any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender to recover compensatory and punitive damages, and attorneys' fees and costs. New York City Administrative Code § 10-1101, *et seq*.

62.     The law defines "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."

63.     Here, as set forth above and expressly incorporated herein, Cruz engaged in one or more crimes of violence against Jane Doe motivated by her gender as a female, which would

constitute a misdemeanor or felony as defined in state law.

64.    Moreover, during these crimes of violence, Cruz engaged in one or more crimes motivated by her gender as a female, which would constitute a misdemeanor or felony as defined in state law.

65.    Specifically, Cruz engaged in Unlawful Surveillance in the Second Degree as defined by NY Penal Law § 250.45 when: (i) for his own amusement, entertainment, sexual arousal, or sexual gratification, or for the purpose of degrading or abusing a person, he intentionally used or installed an imaging device to surreptitiously record Plaintiff's sexual or intimate parts without her knowledge and/or without her consent; and/or (ii) for his own amusement, entertainment, sexual arousal or gratification, or for the purpose of degrading or abusing a person, he intentionally used an imaging device to surreptitiously record Plaintiff in an identifiable manner: (a) engaging in sexual conduct, (b) in the same image with the sexual or intimate part of any other person; and (c) at a place and time when Plaintiff had a reasonable expectation of privacy, without Plaintiff's knowledge or consent.

66.    Cruz's crimes of violence against Jane Doe were committed because of her gender or on the basis of gender.

67.    Accordingly, Defendant is liable to Jane Doe under the Victims of Gender-Motivated Violence Protection Law for compensatory and punitive damages, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

68.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

69.    Defendant's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

70. Defendant's outrageous conduct was not the type of ordinary rude or obnoxious behavior that sexual partners should be expected to weather. Rather, Defendant's conduct exceeded all possible bounds of decency.

71. Defendant acted with intent or recklessness and knew or should have known that Plaintiff was likely to endure emotional distress.

72. Defendant's conduct caused suffering for Plaintiff at levels no reasonable person should have to endure.

73. As a direct result of Defendant's actions, Plaintiff suffered pain and suffering, mental anguish, and loss of the capacity for the enjoyment of life, and has incurred expenses for medical treatment, loss of property, and loss of earnings. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

74. Defendant's acts were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

76. Defendant's conduct intentionally, recklessly, or negligently caused Plaintiff physical harm and emotional distress.

77. As a direct result of Defendant's actions, Plaintiff suffered pain and suffering, mental anguish, and loss of the capacity for the enjoyment of life, and has incurred expenses for medical treatment, loss of property, and/or loss of earnings. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff respectfully requests that this Court find in favor of Jane Doe, enter judgment against Defendant, award compensatory and punitive damages, award attorneys' fees and costs, and grant such other and further relief as this Court deems appropriate.

Dated: February 9, 2024

JANE DOE, Plaintiff

By: _/s/ Jonathan D. Lindenfeld_
Jonathan D. Lindenfeld
FEGAN SCOTT LLC
305 Broadway, 7th Floor
New York, New York 10007
Ph: 332.216.2101
jonathan@feganscott.com

Elizabeth A. Fegan (to be admitted *pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
beth@feganscott.com

*Counsel for Plaintiff*

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Jane Doe hereby demands a trial by jury in the above-captioned action of all issues triable by jury.

Dated: February 9, 2024

FEGAN SCOTT LLC

By: _/s/ Jonathan D. Lindenfeld_
Jonathan D. Lindenfeld
FEGAN SCOTT LLC
305 Broadway, 7th Floor
New York, New York 10007
Ph: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com

Elizabeth A. Fegan (_to be admitted pro hac vice_)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: (312) 741-1019
beth@feganscott.com

_Counsel for Plaintiff_

13

## VERIFICATION PAGE

     I, ███████████, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 9, 2024

DocuSigned by:

█████████████

9C8970A3015047A...

████████████